UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM GRACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16CV70 SNLJ |
| | ) | |
| IAN WALLACE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, *pro se*, filed this 42 U.S.C. § 1983 action against defendants Tomas Cabrera, Nina Hill, and Becky Lizenbee, alleging they were deliberately indifferent to his serious medical needs in violation of plaintiff's Eighth Amendment rights. Currently pending before the Court is defendants' motion for summary judgment (#58). The motion has been briefed and is ripe for disposition.

I.  **Factual Background**

At all times relevant to the complaint, plaintiff was incarcerated in Missouri Department of Corrections. plaintiff's allegations span his time spent at both Northeast Correctional Center ("NECC") and Southeast Correctional Center ("SECC") and names as defendants three medical care providers --- Dr. Cabrera at NECC, Nurse Practitioner Nina Hill at SECC, and Nurse Becky Lizenbee at SECC.

Plaintiff is HIV positive. With regard to Dr. Cabrera, plaintiff alleges he denied him medical care at NECC by "condoning" nurses' behavior in denying plaintiff his

1

medications and by denying plaintiff "proper nutrition." Plaintiff submits that he was denied HIV and other medications by nursing staff on various dates in January, February, March and April 2016, and that he reported these failures to Dr. Cabrera in February and April 2016, and that Dr. Cabrera did nothing. Plaintiff additionally contends he reported rectal bleeding to Dr. Cabrera on February 15, 2016 and March 31, 2016, but that Dr. Cabrera did nothing.

Regarding Nurse Practitioner Nina Hill, plaintiff alleges she saw him on November 13, 2015 at SECC and reviewed his records dating back to 2012 showing that he had previously received Ensure, but refused to prescribe it. Plaintiff contends this amounted to deliberate indifference.

Finally, plaintiff alleges Nurse Becky Lizenbee was deliberately indifferent by denying him proper nutrition even though she knew he was suffering from AIDS-related complex and wasting syndrome.

### A. Grievance Records

Plaintiff did not complete any grievances regarding any claim against Dr. Cabrera or Nurse Lizenbee. The only claim exhausted by plaintiff is that Nurse Practitioner Hill allegedly denied him proper nutrition. The grievance procedure at both MDOC facilities consists of an informal and formal internal process and an appeal. A grievance is not considered exhausted unless and until the inmate completes the formal grievance procedure at the appeal level. All offenders are provided access to the grievance

procedure unless special limitations have been placed as a result of offender misuse of the grievance procedure.

Plaintiff filed three medical grievances at NECC.

- Grievance NECC-16-128 on January 21, 2016, complaining that Nurse Denise Morris interfered with treatment prescribed by a doctor concerning double portion food trays and requesting that she change his lay-in to allow them. This grievance was denied at the informal and formal levels, and on appeal. In his appeal, plaintiff added that Dr. Cabrera and the Health Service Administrator ("HSA") refused to provide him proper nutrition; however, this was not the subject matter of his underlying grievance, and the issue was not considered on appeal. Only the complaint made in plaintiff's underlying IRR regarding Grievance NECC-16-128 was considered.

- Grievance NECC-16-109 was also logged on January 21, 2016, but it was a duplicate of the preceding IRR.

- Grievance NECC-16-358 on March 11, 2016, complaining that he was denied HIV medication on February 10, 2016 because he had missed the medication line. Plaintiff filed a formal grievance on June 7, 2016, complaining that the HAS and Director of Nursing knew he was denied HIV medication on February 10, 2016 but declined to help him. This grievance has not been completed through the appeal level of the MDOC grievance procedure.

Plaintiff's grievance records at NECC do not reveal any grievances complaining about rectal bleeding or medical treatment rendered for the same.

Plaintiff's grievance records at SECC show he filed six medical grievances. None of them involve rectal bleeding, complaints of being denied or delayed access to his HIV medications, or complaining regarding any conduct of Becky Lizenbee.

B.  Medical Treatment

Plaintiff is 5'7" tall. A healthy Body Mass Index ("BMI") for plaintiff is 19 to 24, which corresponds to a weight range of 121 and 153 pounds at his height. Plaintiff was at a normal healthy weight during his incarceration at SECC. Plaintiff saw various medical staff, including defendants Hill and Lizenbee, while incarcerated at SECC, but his weight fluctuations were normal (within about 10 pounds) until around November 13, 2015. On that day, he saw defendant Hill about complaints of an ingrown toenail. He weighed 129 pounds and his BMI was 20.5, both of which were normal, but Hill noted plaintiff had lost 19 pounds since January 2015. Hill submitted an order for plaintiff to receive double meal portions.

On November 27, 2015, plaintiff saw a nurse, complained of losing weight, and requested Ensure. He weighed 130 pounds. The nurse reviewed past weights and noted it had been steady around 130 pounds. The nurse also noted Hill had issued an order for double portions on November 13, 2015.

Plaintiff received his HIV antiviral medications during his time at SECC and his lab results (CD4 counts and HIV viral load counts) were stable. A CD4 count is a lab test that measures the number of CD4 T-lymphocytes (CD4 cells or T-cells) in a blood sample. CD4 cells or T-cells are a type of white blood cell that protects the body from infections. They send signals to activate the body's immune response when they detect "intruders" like viruses or bacteria. However, the HIV virus destroys the body's CD4 cells and makes the patient unable to fight off other infections. In patients with HIV,

4

CD4 levels are the most important laboratory indicator of how well the immune system is working and the strongest predictor of HIV progression. A normal CD4 count in a healthy individual ranges from 500 to 1,600. Individuals with HIV who have CD4 counts over 500 are usually in good health. Individuals with HIV who have CD4 counts below 200 are considered to have AIDS and are at significant risk of developing serious illnesses.

On or around January 5, 2016, plaintiff transferred from SECC to NECC, and Hill and Lizenbee had no further involvement with his care. In Hill's medical opinion, plaintiff did not have wasting syndrome and did not need Ensure supplements.

After plaintiff transferred to NECC, he was regularly monitored and treated for his HIV. Plaintiff alleges a nurse refused to give him HIV medications on January 10, 2016, but the Medication Administration Record ("MAR") shows he received his medications that day. On January 11, 2016, labs showed his CD4 level had increased to 571 and his viral load remained not detected.

On January 13, 2016, plaintiff submitted an HSR requesting to review lay-in status complained of losing weight and needing Ensure. He weighed 125 pounds, which was a healthy weight. The nurse reviewed past vital signs which showed a weight of 148 in January 2015 and planned to refer to DSC for review of issuing Ensure for weight.

Dr. Cabrera saw plaintiff on February 2, 2016. Plaintiff reported doing okay with medications and had no complaints other than weight loss. He requested Ensure. Dr. Cabrera noted plaintiff was 5'7" and weighed 125 pounds, which was within the normal

121 to 153 pound range. Dr. Cabrera reviewed the lab results, which indicated effective anti-viral therapy.

Plaintiff was stable, and Dr. Cabrera renewed his medications because they were effective. On February 7, 2016, plaintiff submitted an HSR requesting his diet card to be renewed for double portions. On February 15, 2016, plaintiff self-declared a medical emergency, saw a nurse, and stated he could not always get to medical for his HIV medications because his housing unit does not always call for it. He also told the nurse he had a little blood in his stool twice in the past week. Plaintiff weighed 124 pounds. The nurse advised him to submit HSRs.

Plaintiff never told Dr. Cabrera he had blood in his stool and Dr. Cabrera did not learn of those complaints until after plaintiff filed his lawsuit. All the nurses are aware that HIV medications must be given every day in order to be effective. The virus can mutate if the medications are only taken sporadically. Plaintiff complained that security issues prevented him from getting to medical to get his medications. On other occasions, he refused to take his medications, and his refusals are documented in the MARs.

Dr. Cabrera saw plaintiff again on February 16, 2016, and plaintiff requested double portions and stated he was underweight. However, he was 5'7" and weighed 135 pounds, although he told medical staff he weighed 125 pounds. Dr. Cabrera noted plaintiff clearly did not qualify for double portions.

In March 2016, plaintiff was taking atazanavir, lamivudine, and tenofovir for his HIV. The MAR shows the initial "R" on the dates that plaintiff refused his medications. On April 22, 2016, plaintiff's viral load was still not detected. The April MAR shows he

6

received atazanavir, lamivudine, and tenofovir for his HIV but sometimes refused it. On May 5, 2016, plaintiff saw Dr. Brennan and complained that nortriptyline did not help his pain and threatened that he would not take his HIV medications unless he was given pain medications. He weighed 132 pounds, which was a healthy weight.

Plaintiff refused to take any "mental health med" for pain. Dr. Brennan explained that tricyclics are nerve and brain medications, not mental health. Plaintiff agreed to try Cymbalta for pain. On May 15, 2016, plaintiff submitted an HSR stating he was deteriorating and you could see his bone structure. On May 17, 2016, he saw a nurse for his complaints of weight loss. The nurse noted his HSR included a letter to Dr. Cabrera, but Dr. Cabrera never received it or reviewed it until after plaintiff filed his lawsuit. The HSRs are collected, reviewed, and triaged by the nurses. The nurse noted plaintiff weighed 142 pounds two years ago, 135 pounds one year ago, and 130 pounds that day.

In May 2016, plaintiff was prescribed atazanavir, lamivudine, and tenofovir but refused them on several days. On June 3, 2016, plaintiff saw Dr. Brennan and stated he would like Ensure as he had it in the past. He weighed 129 pounds, for a BMI of 21, which was normal and healthy. Plaintiff denied nausea, vomiting, hemoptysis, and diarrhea. Plaintiff told Dr. Brennan to never call him to medical anymore unless he could get Ensure. Dr. Brennan noted plaintiff was not consistent with taking his HIV medications per the Infection Control Nurse. Dr. Brennan also noted plaintiff did not meet the criteria for Ensure.

On June 6, 2016, plaintiff saw a nurse due to missing his medications. He stated he was tired of "custody not letting him take meds when he was late because he was in 10 house." Plaintiff also requested a diet bag because he lost weight. The nurse noted he had

7

just been seen by a physician and did not meet criteria for extra nutrition. She educated plaintiff on the risks of not taking his HIV medications or taking them sporadically.

Plaintiff responded he was aware of risks but was "tired of the system." The nurse offered to change the timing of the medications to help plaintiff achieve compliance, but he stated he wanted to keep them scheduled for the same time. The nurse planned to monitor the MAR for two weeks. If plaintiff continued to refuse meds, she planned to schedule him with a physician. On June 28, 2016, Dr. Cabrera saw plaintiff in sick call and noted he refused to take his HIV medications. Dr. Cabrera told him they had to discontinue his medications because taking them sporadically could allow the virus to mutate and develop resistance to medications. In June 2016, Plaintiff was prescribed atazanavir, lamivudine, and tenofovir for HIV, but refused them or was absent on several days.

On July 8, 2016, plaintiff underwent blood tests. His CD4 count was down to 498 and his viral load count was up to 36,723. On July 19, 2016, Dr. Cabrera saw plaintiff and noted he was not on his HIV medications and his viral load had come up. Plaintiff claimed he was not refusing his medications but "somebody" was preventing him from getting his medication.

On August 2, 2016, plaintiff again underwent blood tests. His CD4 count was down to 446 and his viral load was up to 110,369. Plaintiff weighed 125 pounds. On August 8, 2016, he weighed 124 pounds. He submitted another HSR requesting Ensure. On August 12, 2016, plaintiff submitted an HSR stating he needed a blend diet due to weight loss. He submitted another HSR requesting Ensure and stating his weight was 124 pounds.

8

Dr. Cabrera saw plaintiff again on August 17, 2016, and plaintiff weighed 122 pounds. Dr. Cabrera noted plaintiff stopped taking his HIV medications and his viral load shot up to 37,000 and his CD4 came down to 498. Plaintiff requested to restart his HIV medications. He stated he had lost 29 pounds in four months and was not feeling well. The BMI chart for a 5'7" individual is 121-154 pounds, so he was still in the normal weight range.

However, because he was only one pound away from the bottom of the healthy range, Dr. Cabrera did order Ensure at this time. He noted plaintiff was not on HIV medications due to his own noncompliance, but restarted them. Dr. Cabrera also ordered Pain Off, and acetaminophen, aspirin, and caffeine for headaches. Plaintiff's weight began increasing again. On August 19, 2016, he weighed 124 pounds. On August 23, it was up to 125, and on September 7, 2016, he weighed 128 pounds.

On August 31, 2016, plaintiff's CD4 had increased to 465 and his viral load decreased from 110,369 to 842. He was prescribed Ensure from August 17, 2016 through November 15, 2016 and was again prescribed atazanavir, lamivudine, and tenofovir beginning August 18, 2016.

On September 22, 2016, plaintiff's CD4 was up to 593 and his viral load was down to 165. Dr. Cabrera saw plaintiff again on October 18, 2016. He noted plaintiff had seen the HIV specialist, who was pleased with the treatment results. Plaintiff's weight was up to 137 pounds. Dr. Cabrera explained to plaintiff that he could not miss a dose of his HIV medications. Plaintiff's condition was improved, and Dr. Cabrera reordered his medications.

9

**II. Discussion**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA") requires a prisoner to exhaust administrative remedies before filing a lawsuit. This requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). It is undisputed that plaintiff has not exhausted any of his claims against Dr. Cabrera or defendant Lizenbee. The only claim he exhausted was the claim that that defendant Hill denied plaintiff proper nutrition. It is clear, however, that defendant Hill did not violate plaintiff's constitutional rights.

A prisoner's Eighth Amendment rights are only violated if prison officials exhibit deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail, the plaintiff must demonstrate that (1) he suffered an objectively serious medical need, and (2) prison officials knew of but deliberately disregarded that need. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

It is undisputed that plaintiff suffers from an objectively serious medical need --- HIV infection. However, "prisoners do not have a constitutional right to any particular type of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). A "mere difference of opinion over matters of expert medical judgment or a course of medical treatment" does not rise to the level of a constitutional violation. *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010).

Plaintiff claims that defendant Hill violated his constitutional rights by denying him proper nutrition. The evidence, however, shows that plaintiff was always at a

healthy weight at SECC. When plaintiff requested extra food on June 29, 2015, Hill reviewed his weight and BMI and noted that his weight had remained within ten pounds for the past several years. Hill sought a non-party doctor's opinion, and that doctor agreed plaintiff did not need extra nutrition at that time. Further, on November 13, 2015, Hill did order double portion trays for plaintiff because, although plaintiff's weight was still within the "normal" range, plaintiff's weight had decreased by 19 pounds that year.

Notwithstanding plaintiff's failure to exhaust his administrative remedies,[1] the Court notes that plaintiff similarly cannot maintain his claims against defendants Lizenbee or Cabrera on the merits. There is no evidence that defendant Lizenbee was ever aware that plaintiff needed supplemental nutrition; indeed, defendant Lizenbee saw plaintiff on February 27, 2015, when plaintiff weighed 140 pounds --- which was well within the normal range of a healthy weight for a man of plaintiff's stature.

As for Dr. Cabrera, there is no indication Dr. Cabrera was ever deliberately indifferent to plaintiff's serious medical needs. When plaintiff's weight dropped to within a pound of the lower end of the health-weight range, he ordered Ensure supplements. Further, Dr. Cabrera only discontinued plaintiff's HIV medications because plaintiff consistently failed to take them, and it is undisputed that missing a dose of HIV medication is detrimental to the patient's health --- it can cause the virus to mutate and make it resistant to medications. As plaintiff's lab results worsened, Dr.

---

[1] Plaintiff suggests that he tried to exhaust administrative remedies but that they were not logged into the computer or otherwise went unanswered. Plaintiff provides no support for this allegation, and, furthermore, the record shows plaintiff had several grievances on record --- so the process was available to him.

Cabrera counseled plaintiff and resumed his medications. Plaintiff states that he did not refuse his medications but that he was unable to get himself to the appointed place for pill dispensing. It is clear, however, that none of the defendants here were responsible for those circumstances and, in fact, it appears that a nurse offered to change plaintiff's pill time. Plaintiff refused that offer. As for plaintiff's complaints of rectal bleeding, there is no evidence that plaintiff ever told Dr. Cabrera of that symptom.

Thus, even if plaintiff had exhausted his administrative remedies on his claims against Dr. Cabrera and Nurse Lizenbee, the defendants would be entitled to summary judgment. The record demonstrates that no defendant was deliberately indifferent to plaintiff's serious medical condition.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment (#58) is GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's motion for production of documents (#75) is DENIED as moot.

Dated this __28th__ day of November, 2017.

                                                      STEPHEN N. LIMBAUGH, JR.
                                                    UNITED STATES DISTRICT JUDGE